## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JUSTINE LOUISE SIMON,** | : | **Civil No.  1:20-cv-02064** |
| | : | |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **KILOLO KIJAKAZI,** | : | |
| **Acting Commissioner of Social Security,[1]** | : | |
| | : | |
| **Defendant** | : | |

## MEMORANDUM OPINION

## I.    Introduction

For Administrative Law Judges (ALJs), Social Security disability determinations frequently entail an informed assessment of competing medical opinions coupled with an evaluation of a claimant's subjective complaints. Once the ALJ completes this task, on appeal it is the duty and responsibility of the district court to review these ALJ findings, judging the findings against a deferential standard of review which simply asks whether the ALJ's decision is supported by substantial evidence in the record,  see 42 U.S.C. § 405(g); Johnson v. Comm'r of

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Accordingly, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure and 42 U.S.C. § 405(g) Kilolo Kijakazi is substituted for Andrew Saul as the defendant in this suit.

<u>Soc. Sec.</u>, 529 F.3d 198, 200 (3d Cir. 2008); <u>Ficca v. Astrue</u>, 901 F. Supp.2d 533, 536 (M.D. Pa. 2012), a quantum of proof which "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Pierce v. Underwood</u>, 487 U.S. 552, 565 (1988).

Yet while this is a deferential substantive standard of review it is also incumbent upon the ALJ to sufficiently articulate the rationale for the decision to allow for meaningful judicial review. Where this duty of articulation is not fully satisfied, a remand is appropriate.

So it is here.

In the instant case, the ALJ denied a disability application submitted by the plaintiff, Justine Louise Simon. The ALJ concluded that Simon could perform a limited range of light work and denied her disability application. Specifically, the ALJ found persuasive the opinion of a consulting examiner, who opined that Simon could perform a range of light work, including a limitation that she could only retain and follow simple instructions, *i.e.*, perform one and two step tasks or instructions. Then in crafting the plaintiff's residual functioning capacity ("RFC"), the ALJ omitted this finding, and ultimately limited Simon to simple routine tasks and unskilled work without this further limitation that was identified in the opinion of

the consulting source, an opinion that the ALJ found to be persuasive. After a review of the record, while we regard this as a close case, we find that the ALJ failed to adequately explain this omission from the RFC finding, and thus the ALJ's RFC determination is not supported by substantial evidence. Accordingly, we will remand this case for further consideration by the Commissioner.

## II.   <u>Statement of Facts and of the Case</u>

On September 7, 2018, Simon applied for applied for disability and supplemental security insurance benefits, citing an array of physical and emotional impairments, including gastritis, perforated ulcer, Nissen fundoplication, acid reflux, chronic depression, scar tissue removal, irritable bowel dumping syndrome, Crohn's disease, anxiety, and PTSD. (Tr. 209). Simon was 42 years old at the time of the alleged onset of her disability, March 13, 2018, and had prior employment as a forklift driver, a tractor trailer driver, and a truck driver. (Tr. 105, 210). Simon alleged impairments of gastritis, perforated ulcer, 2 nissenfundoplication, acid reflux, chronic depression, scar tissue removal, irritable bowel dumping syndrome, chrons, anxiety, and post-traumatic stress disorder ("PTSD"). (Tr. 209).

With respect to these alleged impairments,[2] the clinical record, medical opinions, and Simon's activities of daily living revealed the following: Simon treated for her mental impairments since at least July of 2016, when it was noted that she had a history of sexual and physical abuse. (Tr. 304). At that time, Simon presented for inpatient treatment and was diagnosed with bipolar disorder, PTSD, opioid use disorder, and alcohol use disorder. (Tr. 305). In January 2017, Simon's treating physician, Jude Sidari M.D., provided a medical source statement stating that Simon had severe bipolar depression and panic disorder. (Tr. 383, 387). Dr. Sidari noted Simon was unable to focus and had poor cognition, and that her prognosis was poor. (Tr. 383). Furthermore, Dr. Sidari opined that Simon's impairments meant she would be "off task" 25% or more of the workday and would be incapable of even "low stress" work. (Tr. 385).

On February 5, 2019, Shelly Ross, Ph.D., the State agency consulting psychologist found that Simon would be moderately limited in her ability to carry out detailed instructions and moderately limited in her ability to maintain attention and concentration for extended periods. (Tr. 115). She concluded Simon could

---

[2] The plaintiff's appeal focuses on her mental impairments. Thus, we will discuss only those impairments.

"understand, retain and follow simple instructions (*i.e.*, perform/follow one and two-step tasks/instructions)." (Tr. 117).

In September of 2019, Dr. Sidari provided an updated medical source statement which was essentially the same as his prior opinion. (Tr. 729-30). This statement indicated that Simon was incapable of performing even low stress work and would be off task 25% or more of the time. (Id.)

Allison Brobst, PA-C provided a mental medical source statement on September 18, 2019, less than one month after her first encounter with Simon. (Tr. 732). This statement indicated Simon had severe anxiety daily, which was exacerbated around people and social situations. (Id.) She experienced poor sleep, nightmares, flashbacks of traumatic events, feelings of hopelessness, an inability to concentrate and focus, forgetfulness, fatigue, and low energy. (Id.) Ms. Brobst provided an opinion as to Simon's mental limitations which ranged from "seriously limited" to "no useful ability to function." (Tr. 734-36).

Thus, the greater weight of the medical opinion evidence in terms of the number of medical opinions supported a find of disability for Simon. Moreover, the state agency consulting source's opinion contained an explicit limitation that Simon could only "perform/follow one and two-step tasks/instructions."

It is against the backdrop of this evidence that the ALJ conducted a hearing in Simon's case on May 1, 2019. (Tr. 13). Simon and a vocational expert ("VE") both testified at this hearing. Following this hearing on May 1, 2019, the ALJ issued a decision denying Simon's application for benefits. (Tr. 13-25). In that decision, the ALJ first concluded Simon had not engaged in substantial gainful activity since March 13, 2018, the alleged onset date. (Tr. 15). At Step 2 of the sequential analysis that governs Social Security cases, the ALJ found that Simon had the following severe impairments: degenerative disc disease; gastroesophageal reflux disease, status post-surgery; major depressive disorder; generalized anxiety disorder; bipolar disorder; and PTSD. (Id.) At Step 3 the ALJ determined that none of these impairments met or medically equaled the severity of any of the listed impairments. (Tr. 16).

Between Steps 3 and 4 the ALJ concluded that Simon retained the following residual functional capacity ("RFC"):

> [Simon] has the [RFC] to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except occasional balancing, stooping, kneeling, crouching, and climbing on ramps and stairs, but never crawling and never climbing on ladders, ropes or scaffolds. She must avoid unprotected heights and dangerous moving machinery. She must avoid overhead reaching with the bilateral upper extremities. She is limited to simple routine tasks generally described as unskilled, but not at a production rate pace, meaning no fast-paced assembly line work. She is limited to occupations requiring no more than simple work-related decisions, with no more than occasional changes in the work

6

setting. She is limited to occasional interaction with supervisors, coworkers, and the public.

(Tr. 18).

In reaching this RFC determination, the ALJ considered the medical evidence as well as the opinion evidence. With respect to Simon's physical impairments, the ALJ found the opinion of Dr. Monfared to be unpersuasive. (Tr. 22). Dr. Monfared opined as to Simon's physical limitations, and found that Simon could lift/carry up to 100 pounds. (Tr. 713-17). In an eight-hour day, she could sit eight hours and stand or walk for seven. (Id.) She could use her feet to operate foot controls, perform postural activities, and sometimes tolerate exposure to humidity and wetness, dust, odors, fumes, and pulmonary irritants, extreme cold, and extreme heat. (Id.) She could also tolerate loud noises. (Id.) Dr. Monfared also noted that Simon had back pain, asthma, and had been seizure free for the past two years. (Tr. 22). The ALJ found this opinion to be inconsistent with the record. (Id.) He noted that, although Simon's physical examinations were unremarkable, she underwent numerous abdominal surgeries prior to her alleged onset date and that it was likely she experiences residual symptoms. (Id.). The ALJ found that the combination of gastrointestinal and musculoskeletal impairments warranted a restriction to light level work. (Id.).

The ALJ also considered the opinion of Dr. Henderson, the State agency medical consultant, and determined that it was persuasive. (Id.). Dr. Henderson recorded Simon could lift/carry 20 pounds occasionally and 10 pounds frequently. (Tr. 122). She could sit and stand/walk about six hours each in an eight-hour workday. (Tr. 127). She could occasionally climb ladders/ropes/scaffolds and frequently climb ramps/stairs, balance, stoop, kneel, crouch, and crawl. (Tr. 128). The ALJ noted that Dr. Henderson utilized the clinical findings of Dr. Monfared as well as Simon's own complaints in her treatment notes. (Tr. 22). Her opinion was consistent with Simon's unremarkable physical examinations. (Id.).

The ALJ next found the opinion of Simon's primary care physician, Dr. Jude Sidari, unpersuasive. (Id.). With respect to her mental limitations, Dr. Sidari opined that Simon could expect to be off task 25 percent or more of the workday and she was incapable of even low-stress work (Tr. 729). The ALJ found that Dr. Sidari failed to identify any specific clinical findings or objective signs in support of his opinion. (Tr. 22). He considered the basis of this opinion unclear, and held that the absence of any significant medical findings in the record was inconsistent with the extreme limitations indicated by Dr. Sidari (Id.)

The ALJ found the opinion of the State agency psychological consultant, Shelley Ross, PhD, generally persuasive. (Id.) Dr. Ross described Simon as having

mild limitations in understanding, remembering, or applying information, and moderate limitations in interacting with others, concentrating, persisting, or maintaining pace, and adapting or managing oneself (Tr. 115-16). Dr. Ross also found that Simon had been responding well to medications and that her mental status findings were normal in December of 2018. (Tr. 116). Further, Dr. Ross opined that Simon would be limited to performing or follow one and two-step tasks and instructions. (Tr. 117). The ALJ considered Dr. Ross's opinion to be largely but not entirely consistent with the medical record. (Tr. 22). Except for evidence of a depressed mood at times, Simon's mental status findings were generally unremarkable. (Id.)

Finally, the ALJ found the opinion of Allison Brobst, PA-C, from the Ethos Clinic, unpersuasive. Ms. Brobst opined that Simon was unable to meet competitive standards and had no useful ability to function in almost all areas of mental functioning. (Tr. 733-37). She listed Simon's symptoms of daily severe anxiety, poor sleep with nightmares, flashback of traumatic events, hopelessness, inability to concentrate/focus, forgetfulness, and fatigue. (Id.) The ALJ found that Ms. Brobst's opinion was inconsistent with the medical record because, except for a finding of depressed mood, Simon's mental status findings were generally unremarkable. (Tr. 23). He noted that, although Simon testified about nightmares as a side effect from

9

her medications, Ms. Brobst stated there were no side effects. (Id.) Notes from Simon's prior mental health provider at the time showed largely unremarkable mental status findings. (Id.) Furthermore, Simon reported occasional forgetfulness, but denied significant difficulty with concentration. (Id.)

The ALJ then found at Step 4 that Simon could not perform her past work, but found at Step 5 that Simon retained the capacity to perform other jobs that existed in significant numbers in the national economy. Having reached these conclusions, the ALJ determined that Simon had not met the demanding showing necessary to sustain her claim for benefits and denied her claim.

This appeal followed. (Doc. 1). On appeal, Simon challenges the adequacy of the ALJ's decision arguing that: (1) the ALJ erroneously failed to include the uncontroverted limitation to one to two step functioning within the RFC assessment and failed to discuss or explain his basis for doing so; (2) the ALJ's RFC was not supported by substantial evidence because it exceeded the limitations of all medical opinions of record; and (3) the ALJ's decision was constitutionally defective because the appointment of Andrew Saul as a single Commissioner of the Social Security Administration ("SSA") who is removable only for cause and serves a longer term than that of the President violates separation of powers. (Doc. 19, at 5-6).

As discussed in greater detail below, while we regard this as a close case, we find that the ALJ's failure to adequately explain the omission of a one-to-two-step task limitation warrants a remand of this case. Accordingly, we will remand this decision for further consideration by the Commissioner.[3]

## III.   <u>Discussion</u>

### A.   <u>Substantial Evidence Review – the Role of this Court</u>

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record.  See 42 U.S.C. §405(g); <u>Johnson v. Comm'r of Soc. Sec.</u>, 529 F.3d 198, 200 (3d Cir. 2008); <u>Ficca v. Astrue</u>, 901 F.Supp.2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Pierce v. Underwood</u>, 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a

---

[3] Having reached this conclusion regarding this particular ground for remand we do not find it necessary to address the other issues raised by Simon on appeal.

11

conflict created by the evidence. <u>Mason v. Shalala</u>, 994 F.2d 1058, 1064 (3d Cir.

1993). But in an adequately developed factual record, substantial evidence may be

"something less than the weight of the evidence, and the possibility of drawing two

inconsistent conclusions from the evidence does not prevent [the ALJ's decision]

from being supported by substantial evidence." <u>Consolo v. Fed. Maritime Comm'n</u>,

383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is

supported by substantial evidence the court must scrutinize the record as a whole."

<u>Leslie v. Barnhart</u>, 304 F. Supp.2d 623, 627 (M.D. Pa. 2003).

> The Supreme Court has underscored for us the limited scope of our review in

this field, noting that:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. <u>T-Mobile South, LLC v. Roswell</u>, 574 U.S. ——, ——, 135 S.Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." <u>Ibid</u>.; <u>see, e.g., Perales</u>, 402 U.S. at 401, 91 S.Ct. 1420 (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Consolidated Edison</u>, 305 U.S. at 229, 59 S.Ct. 206. <u>See Dickinson v. Zurko</u>, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

Biestek, 139 S. Ct. at 1154.

The question before this Court, therefore, is not whether Simon is disabled, but rather whether the Commissioner's finding that [she] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. See Arnold v. Colvin, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence") (alterations omitted); Burton v. Schweiker, 512 F.Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts"); see also Wright v. Sullivan, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); Ficca, 901 F.Supp.2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

Several fundamental legal propositions flow from this deferential standard of review. First, when conducting this review "we are mindful that we must not substitute our own judgment for that of the fact finder." Zirnsak v. Colvin, 777 F.3d 607, 611 (3d Cir. 2014) (citing Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005)). Thus, we are enjoined to refrain from trying to re-weigh the evidence. Rather our task is to simply determine whether substantial evidence supported the ALJ's findings. However, we must also ascertain whether the ALJ's decision meets the

burden of articulation demanded by the courts to enable informed judicial review.

Simply put, "this Court requires the ALJ to set forth the reasons for his decision."

Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 119 (3d Cir. 2000). As the

Court of Appeals has noted on this score:

> In Burnett, we held that an ALJ must clearly set forth the reasons for
> his decision. 220 F.3d at 119. Conclusory statements . . . are
> insufficient. The ALJ must provide a "discussion of the evidence" and
> an "explanation of reasoning" for his conclusion sufficient to enable
> meaningful judicial review. Id. at 120; see Jones v. Barnhart, 364 F.3d
> 501, 505 & n. 3 (3d Cir.2004). The ALJ, of course, need not employ
> particular "magic" words: "Burnett does not require the ALJ to use
> particular language or adhere to a particular format in conducting his
> analysis." Jones, 364 F.3d at 505.

Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 504 (3d Cir. 2009).

Thus, in practice ours is a twofold task. We must evaluate the substance of the

ALJ's decision under a deferential standard of review, but we must also give that

decision careful scrutiny to ensure that the rationale for the ALJ's actions is

sufficiently articulated to permit meaningful judicial review.

## B.   Initial Burdens of Proof, Persuasion, and Articulation for the ALJ

To receive benefits under the Social Security Act by reason of disability, a

claimant must demonstrate an inability to "engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment which can

be expected to result in death or which has lasted or can be expected to last for a

14

continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A); 42 U.S.C. §1382c(a)(3)(A); see also 20 C.F.R. §§404.1505(a), 416.905(a). To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. §423(d)(2)(A); 42 U.S.C. §1382c(a)(3)(B); 20 C.F.R. §§404.1505(a), 416.905(a). To receive benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. §423(a); 20 C.F.R. §404.131(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. §§404.1520(a), 416.920(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and RFC. 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4).

Between Steps 3 and 4, the ALJ must also assess a claimant's RFC. The RFC is defined as "that which an individual is still able to do despite the limitations caused

by his or her impairment(s)." <u>Burnett</u>, 220 F.3d at 121 (citations omitted); <u>see also</u> 20 C.F.R. §§404.1520(e), 404.1545(a)(1), 416.920(e), 416.945(a)(1). In making this assessment, the ALJ considers all of the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. §§404.1545(a)(2), 416.945(a)(2).

Once the ALJ has made this determination, our review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence. <u>Burns v. Barnhart</u>, 312 F.3d 113, 129 (3d Cir. 2002); <u>see also</u> <u>Rathbun v. Berryhill</u>, No. 3:17-CV-00301, 2018 WL 1514383, at *6 (M.D. Pa. Mar. 12, 2018), <u>report and recommendation adopted</u>, No. 3:17-CV-301, 2018 WL 1479366 (M.D. Pa. Mar. 27, 2018); <u>Metzger v. Berryhill</u>, No. 3:16-CV-1929, 2017 WL 1483328, at *5 (M.D. Pa. Mar. 29, 2017), <u>report and recommendation adopted sub nom.</u> <u>Metzgar v. Colvin</u>, No. 3:16-CV-1929, 2017 WL 1479426 (M.D. Pa. Apr. 21, 2017)..

At Steps 1 through 4, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her in engaging in any of his or her past relevant work. <u>Mason</u>, 994 F.2d at 1064. Once this burden has been met by the claimant, it shifts to the Commissioner at Step 5 to show that jobs exist in significant number in the national economy that the claimant could

perform that are consistent with the claimant's age, education, work experience and RFC.  20 C.F.R. §§404.1512(f), 416.912(f); Mason, 994 F.2d at 1064.

There is an undeniable medical aspect to an RFC determination, since that determination entails an assessment of what work the claimant can do given the physical limitations that the claimant experiences. Yet, when considering the role and necessity of medical opinion evidence in making this determination, courts have followed several different paths. Some courts emphasize the importance of medical opinion support for an RFC determination and state that "[r]arely can a decision be made regarding a claimant's [RFC] without an assessment from a physician regarding the functional abilities of the claimant." Biller v. Acting Comm'r of Soc. Sec., 962 F.Supp.2d 761, 778–79 (W.D. Pa. 2013) (quoting Gormont v. Astrue, Civ. No. 11–2145, 2013 WL 791455 at *7 (M.D. Pa. Mar. 4, 2013)). In other instances, it has been held that "[t]here is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC." Titterington v. Barnhart, 174 F. App'x 6, 11 (3d Cir. 2006). Further, courts have held in cases where there is no evidence of any credible medical opinion supporting a claimant's allegations of disability that "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided." Cummings v. Colvin, 129 F.Supp.3d 209, 214–15 (W.D. Pa. 2015).

17

These seemingly discordant legal propositions can be reconciled by evaluation of the factual context of these decisions. Those cases which emphasize the importance of medical opinion support for an RFC assessment typically arise in the factual setting, like that presented here, where well-supported medical sources have opined regarding limitations which would support a disability claim, but an ALJ has rejected the medical opinion which supported a disability determination based upon a lay assessment of other evidence. Biller, 962 F.Supp.2d at 778–79. In this setting, these cases simply restate the commonplace idea that medical opinions are entitled to careful consideration when making a disability determination, particularly when those opinions support a finding of disability. In contrast, when no medical opinion supports a disability finding or when an ALJ is relying upon other evidence, such as contrasting clinical or opinion evidence or testimony regarding the claimant's activities of daily living, to fashion an RFC courts have adopted a more pragmatic view and have sustained the ALJ's exercise of independent judgment based upon all of the facts and evidence. See Titterington, 174 F. App'x 6; Cummings, 129 F.Supp.3d at 214–15. In either event, once the ALJ has made this determination, our review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported

by substantial evidence. <u>Burns</u>, 312 F.3d 113; <u>see also</u> <u>Rathbun</u>, 2018 WL 1514383, at *6; <u>Metzger,</u> 2017 WL 1483328, at *5.

The ALJ's disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, in order to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." <u>Cotter v. Harris</u>, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. <u>Id</u>. at 706-707. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." <u>Schaudeck v. Comm'r of Soc. Sec.</u>, 181 F. 3d 429, 433 (3d Cir. 1999).

### C.    <u>Simple Tasks RFC Analysis</u>

In <u>Hess v. Comm'r Soc. Sec.</u>, 931 F.3d 198, 212 (3d Cir. 2019), the United States Court of Appeals addressed the question of whether an RFC which limited a claimant to simple tasks adequately addressed moderate limitations on concentration, persistence, and pace. On this score the Court noted that "[t]he

19

relationship between 'simple tasks' limitations and 'concentration, persistence, or pace' is a close one." <u>Id.</u> Given how closely related these two concepts are, the appellate court rejected the notion advanced by the plaintiff that an RFC which limited a claimant to simple tasks failed as a matter of law to address moderate limitations on concentration, persistence, and pace. Instead, the Court concluded that:

> A limitation to "simple tasks" is fundamentally the same as one "to jobs requiring understanding, remembering, and carrying out only simple instructions and making only simple work-related decisions[.]" (App. at 33-34;) <u>see</u> <u>Davis v. Berryhill</u>, 743 F. App'x 846, 850 (9th Cir. 2018) (treating "understanding, remembering, and carrying out only simple instructions" as equivalent to "simple tasks"); <u>Richards v. Colvin</u>, 640 F. App'x 786, 790 (10th Cir. 2016) (referring to a limitation "to understanding, remembering, and carrying out only simple instructions and making only simple work-related decisions" as a "simple-work limitation[ ]"). Indeed, both formulations — the ALJ's and the more concise phrase "simple tasks" — relate to mental abilities necessary to perform "unskilled work." <u>See</u> 20 C.F.R. §§ 404.1568(a), 416.968(a) ("Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time."); SSR 96-9P, 1996 WL 374185, at *9 (July 2, 1996) (concluding that "unskilled work" requires "[u]nderstanding, remembering, and carrying out simple instructions" and "[m]aking ... simple work-related decisions"); <u>cf.</u> <u>Richards</u>, 640 F. App'x at 790 (treating "simple-work limitations" as similar to "unskilled work" limitations). So the parties' reliance on case law related to "simple tasks" is appropriate and helpful.

<u>Hess</u>, 931 F.3d at 210–11.

Having rejected a *per se* rule finding that simple task RFCs are legally inadequate to address moderate limitations in concentration, persistence, and pace,

the Court of Appeals found that, in this setting, the issue was one of adequate articulation of the ALJ's rationale, holding that "as long as the ALJ offers a 'valid explanation,' a 'simple tasks' limitation is permitted after a finding that a claimant has 'moderate' difficulties in 'concentration, persistence, or pace.' " Id. at 211. The appellate court indicated that an ALJ offers a valid explanation for a simple task RFC when the ALJ highlights factors such as "mental status examinations and reports that revealed that [the claimant] could function effectively; opinion evidence showing that [the claimant] could do simple work; and [the claimant]'s activities of daily living, which demonstrated that [s]he is capable of engaging in a diverse array of 'simple tasks[.]'" Id. at 214.

## D.   This Case will be Remanded for Further Consideration by the Commissioner.

As we have noted, an ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." Cotter, 642 F.2d at 704. Furthermore, the ALJ must also "indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." Schaudeck, 181 F.3d at 433. This cardinal principle applies with particular force to several types of assessment made by ALJs. With respect to the instant case, it is well settled that "[t]he ALJ must consider all relevant evidence when determining an individual's residual functional capacity." Fargnoli v. Massanari, 247 F.3d 34, 41 (3d Cir. 2001).

21

Therefore, an ALJ must "explain his reasons for discounting all of the pertinent evidence before him in making his residual functional capacity determination." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 121 (3d Cir. 2000).

In the instant case, we conclude that the ALJ's RFC determination is not supported by an adequate explanation. The ALJ found the opinion of Dr. Ross generally persuasive when crafting Simon's RFC, and he limited Simon to performing simple routine tasks described as unskilled. However, Dr. Ross opined that Simon would be limited to understanding, retaining, and following simple instructions, i.e., performing or following one and two-step tasks or instructions. (Tr. 117). This additional limitation contained within the opinion of Dr. Ross, an opinion deemed persuasive by the ALJ, was not addressed or incorporated into the RFC in any meaningful fashion.

For its part, the Commissioner argues that the ALJ's limitation of Simon to simple routine tasks is all that is required. However, in our view, while it is an extremely close case, we find that more of an explanation is required where an ALJ finds an opinion persuasive that limits the claimant to one-to-two-step tasks but fails to explain why this limitation was not included in the RFC. A recent case from this court is instructive. In Podunajec v. Saul, 2020 WL 7319779 (M.D. Pa. Dec. 11, 2020), Magistrate Judge Saporito found that an ALJ's failure to explain why a one-

to-two-step task limitation was omitted from the RFC assessment required a remand. The ALJ in that case gave great weight to one medical opinion which opined that the claimant could "understand, retain, and follow simple job instructions (i.e. perform/follow one and two step tasks/instructions)." Id. at *5 (internal quotations and citations omitted). However, the ALJ limited the claimant to "simple, routine tasks, but no complex tasks," without a limitation that the claimant would be limited specifically to one-to-two-step tasks. Id. Magistrate Judge Saporito concluded that, although the ALJ was not required to include this limitation despite giving great weight to the opinion, the ALJ was required to explain this decision:

> Additionally, the Court finds that the ALJ erred in her failure to explain why she rejected the limitation to one and two step tasks found by Dr. Rohar, especially in light of her conclusion that his opinion was entitled to great weight. Particularly, in the Mental Residual Functional Capacity Assessment Form completed by Dr. Rohar, he opined three times that "[Podunajec] can understand, retain, and follow simple job instructions (i.e., perform/follow one and two step tasks/instructions). However, the ALJ failed to include the limitation to one and two step tasks in the RFC or explain her rationale for rejecting this limitation, all while assigning great weight to Dr. Rohar's opinion. The contradiction of ignoring certain aspects of Dr. Rohar's findings, and giving some weight or great weight to other aspects of his findings must be explained. See Evanitus v. Berryhill, 3:16-CV-845, slip op. at 22-25 (M.D. Pa. Feb. 28, 2018).
>
> The Court is not suggesting that the ALJ was not bound by Dr. Rohar's opinion concerning Podunajec's limitations, and the ALJ, by no means, was required to adopt all of the limitations found by Dr. Rohar. However, the ALJ was required to explain her basis for choosing to attribute a portion of Dr. Rohar's opinion while rejecting other portions

23

> of his opinion. Therefore, in the absence of an adequate explanation, the Court cannot determine if this probative evidence was credited or simply ignored.

Id. at *6 (citations to the record omitted). See also Maher v. Saul, 2020 WL 5876808 (E.D. Pa. Sept. 9, 2020) (Lloret, M.J.); Beltran v. Berryhill, 3:17-CV-00715, slip op. at 2-3 (M.D. Pa. Feb. 20, 2018) (Schwab, M.J.); Hurrey v. Colvin, 1:14-CV-02408, slip op. at 19-21 (M.D. Pa. Jan. 28, 2016) (Mehalchick, M.J.).

We find Magistrate Judge Saporito's opinion instructive and conclude that in this case, the ALJ was required to further address or explain the decision to omit the limitation to one to two step tasks. Here, Dr. Ross' opinion was found to be generally persuasive by the ALJ. However, the ALJ omitted Dr. Ross' conclusion that Simon would be limited to "understand, retain and follow simple instructions (i.e., perform/follow one and two-step tasks/instructions)." (Tr. 117). This limitation was a material aspect of the doctor's opinion and its unexplained absence from the RFC leaves an evidentiary void in this case. While the ALJ certainly was not required to include this limitation, the ALJ was required to explain the failure to include this limitation, particularly because the ALJ found this opinion to be generally persuasive and supported by the record.

Thus, we conclude that the ALJ's decision in this case is not supported by substantial evidence, as the ALJ did not offer an adequate explanation for rejecting

24

limitations found by a medical opinion that the ALJ concluded was persuasive and on which he relied in part in crafting the RFC. Accordingly, we will remand this case to the Commissioner for further consideration of this evidence. Because we have found a basis for remand on these grounds, we need not address Simon's remaining arguments. To the extent that any other error occurred, it may be remedied on remand. Yet, while we reach this result, we note that nothing in this Memorandum Opinion should be deemed as expressing a judgment on what the ultimate outcome of any reassessment of this evidence should be. Rather, the task should remain the duty and province of the ALJ on remand.

IV.   **Conclusion**

Accordingly, for the foregoing reasons, IT IS ORDERED that this case be REMANDED to the Commissioner for further consideration.

An appropriate order follows.


Dated: March 18, 2022


_/s/ Martin C. Carlson_
Martin C. Carlson
United States Magistrate Judge